# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

KATRINA L. MARTIN, )
 )
          Plaintiff, )
 )
v. ) Case No. CIV-07-107-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
          Defendant. )

## OPINION AND ORDER

Plaintiff Katrina L. Martin, (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED AND REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C.

1

§423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

Claimant was born on December 19, 1986, and was 18 years old at the time of the hearing before the ALJ. She has a high school education. She does not have any previous work experience. Claimant alleges an inability to work beginning February 1, 2005, due to mental retardation and asthma.

## Procedural History

Claimant received Supplemental Security Income ("SSI") benefits based on disability as a child. On October 5, 2005, Claimant was determined to be ineligible for benefits upon attaining the age of 18 as of February 1, 2005. This determination was upheld upon reconsideration. A hearing was held before ALJ John Volz on November 7, 2006, in Sallisaw, Oklahoma. By decision dated January 19, 2007, the ALJ found that Claimant was no longer disabled as of February 1, 2005, through the date of the decision. On March 27, 2007, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical condition was severe, it did not meet a Listing. He concluded that Claimant retained the residual functional capacity ("RFC") to perform a full range of light work and would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

## Review

Claimant asserts that the ALJ erred in: (1) finding that mental retardation was not a

severe impairment; (2) including physical and mental limitations in hypothetical questions posed to the vocational expert ("VE"); and (3) failing to elicit evidence from the VE regarding any conflict between his testimony and information contained in the Dictionary of Occupational Titles ("DOT").

## Mental Retardation as a Severe Impairment

Claimant was referred for a psychological evaluation with WAIS-III on January 28, 2005 with Douglas A. Brown, Ph.D. Dr. Brown found that the testing performed was a "valid reflection of her current level of functioning." (Tr. 181). On the WAIS-III, he found that Claimant "is currently functioning in the high borderline range of intelligence, with [Full Scale I.Q] = 84, [Verbal I.Q.] =92, [Performance I.Q.] =75. The difference between Verbal and Non-Verbal Ability is extremely significant and indicates very serious problems with perceptual and non-verbal capacities. She has strengths in areas such as Common Sense Problem Solving Skills, Abstract Verbal Reasoning Ability, and Auditory Attentiveness. Her most prominent weaknesses are in visual Sequencing, Abstract Spatial Relationships, Understanding Sequences and Consequences of Social Behaviors." (Tr. 181-182). He concluded that "[t]he Index Scores accentuate the difference between Verbal and Non-Verbal Ability with Verbal Comprehension Index of 91 and a Perceptual Organization Index of 72. This certainly reinforces the notion of Perceptual deficits. Her Working Memory Index is good, at 92." (Tr. 182). "These findings indicate a young lady functioning within the Borderline range of intelligence, with a very significant difference between Verbal and Non-Verbal Ability, showing suppression of Non-Verbal capacity. This would suggest a perceptual difficulty, which has probably been the basis for most of her academic difficulties in the past."(Tr. 182).

A Residual Functional Capacity Assessment-Mental was completed by DDS physicians on February 18, 2005 and April 19, 2005. Moderate limitations were noted in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; and the ability to interact appropriately with the general public. (Tr. 193-194, 219-220). The RFC assessment found "Claimant can understand [and] perform simple [and] complex tasks. Claimant can interact appropriately [with] others [at] a superficial level. Claimant can adapt to a work situation." (Tr. 195). "Claimant can understand, remember, and carry out simple and some complex tasks. She can interact appropriately with others at a superficial level. The claimant can adapt to a work situation." (Tr. 221).

The ALJ determined Claimant's only severe impairment resulted from asthma. In finding that Claimant's mental retardation did not constitute a severe impairment, the ALJ noted "the medical evidence shows current testing yielded a verbal I.Q. score of 92, a performance I.Q. of 75, and a full-scale I.Q. score of 84, which falls in the borderline intellectual functioning range. She has also allegedly she suffers from social anxiety, but she reported that she worked in the school cafeteria, has been in a choir, plays baseball, and belongs to Teen Coalition. Additionally she has not seen a mental health professional." (Tr. 14).

The ALJ's RFC assessment determined Claimant had the capacity "to lift and/or carry 20 pounds occasionally and 10 frequently; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; and avoid even moderate exposure to caustic fumes and chemicals." (Tr. 15).

An impairment is considered to be "not severe" "when medical evidence establishes only a slight abnormality or a combination or slight abnormalities which would have no more than a

5

minimal effect on an individual's ability to work...." Soc. Sec. Reg. 85-28. Here, all of the medical evidence establishes that Claimant has some mental restrictions on her ability to engage in work activities including the ability to understand and remember detailed instructions and to carry out those instructions. Additionally, the medical evidence demonstrates limitations on the ability to interact appropriately with the general public. The ALJ's failure to find severe impairments consistent with the evidence resulted in error at step two of the sequential analysis.

**Vocational Testimony**

Claimant also argues that the ALJ improperly proposed hypothetical questions to the vocational expert ("VE") that failed to include her mental limitations. Here, the ALJ requested the VE to consider a hypothetical individual matching Claimant's "age, education and background, who could do tasks which would be classified as light exertional level with no exposure to cleaning chemicals or fumes". (Tr. 337).

In a step-five denial of benefits, the burden of proof shifts to the government to establish the existence of jobs that a claimant could perform within the limitations determined by an ALJ. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). An ALJ may use a VE to determine whether a claimant's past work skills would transfer to a category containing the exertional level that the ALJ has concluded that a claimant could perform. Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). However, any testimony elicited by hypothetical questions that does not precisely relate all of a claimant's impairments cannot constitute substantial evidence to support a denial of benefits. Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). An ALJ's hypothetical questioning of a VE will provide an appropriate basis for a denial of benefits where the questions include all of the limitations ultimately included in the ALJ's

residual functional capacity assessment.   Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000).

As previously discussed, the ALJ erred at step two of the sequential evaluation.  As such, his evaluation at step five was flawed as he failed to include all Claimant's physical and mental limitations in hypothetical questions submitted to the VE.

### DOT Conflicts

Claimant contends the ALJ erred by failing to elicit testimony from the VE concerning any potential conflicts between identified jobs and the Dictionary of Occupational Titles ("DOT").  On remand, the ALJ is directed to elicit the requisite testimony from the VE regarding any conflicts between jobs that are identified and how they correspond to the DOT.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 17th day of June, 2008.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma